IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

LESHA L. WOODS and )
KELBY L. ADAMS on behalf of )
Verna D. Adams, deceased, )
 )
          Plaintiff, )
 )
v. )    Case No. CIV-17-333-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
          Defendant. )

**OPINION AND ORDER**

Plaintiffs Lesha L. Woods and Kelby L. Adams on behalf of Verna D. Adams, deceased (collectively referred to as the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 52 years old at the time of the ALJ's decision. Claimant completed her education through the ninth grade. Claimant has worked in the past as an cage manager for a casino. Claimant alleges an inability to work beginning July 26, 2012 due to limitations resulting from back fusion surgery, back pain, migraine

headaches, high blood pressure, anxiety, and COPD.

**Procedural History**

On April 7, 2014, Claimant protectively filed for protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 4, 2016, Administrative Law Judge ("ALJ") Daniel Curran conducted an administrative hearing in Dallas, Texas. On May 10, 2016, the ALJ entered an unfavorable decision. The Appeals Council denied review on July 12, 2017. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) ignoring and

rejecting the opinion of Claimant's treating physician; (2) failing to properly assess probative medical evidence related to Claimant's efforts to obtain treatment for her migraine headaches; and (3) posing hypothetical questions of the vocational expert which did not mirror her impairments with precision.

### Evaluation of the Opinion Evidence

In his decision, the ALJ found Claimant suffered from the severe impairments of disorders of the spine, degenerative disc disease, depressive disorder, and anxiety-related disorder. (Tr. 133). The ALJ determined Claimant retained the RFC to perform less than a full range of light work. In so doing, he found Claimant could lift/carry 20 pounds occasionally and ten pounds frequently; stand and walk for six hours in an eight hour workday and sit for six hours in an eight hour workday; no climbing ladders, ropes, or scaffolds; all other postural functison limited to occasional; occasional use of upper extremtities, except overhead reaching limited to frequent, "gives 1/3 to rest"; and avoid exposure to pulmonary irritants due to respiratory problems, limiting Claimant to only work in an indoor climate-controlled environment. The ALJ found Claimant had the ability for understanding, remembering, and carrying out only simple instructions; making judgments that are commensurate with the functions of unskilled work – i.e., simple

5

work-related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. However, the ALJ also limited Claimant to work that does not require joint decision-making or teamwork and contact with members of the general public, which must be no more than occasional; and Claimant must not be required to direct or receive directions from them. Interactions on the job with other people must be of a superficial rather than of a substantive nature. Claimant was determined to be able to do only simple, routine, solitary, repetitive work that does not require close oversight by a supervisor. For medication/mental reasons, Claimant must avoid exposure to unguarded hazards such as uneven walking surfaces, open nip points, unprotected heights, moving machinery, and open pits, open flames, open pools of water, or dangerously sharp objects. Finally, Claimant must have work that does not require more than occasional exposure to extremes of temperature, loud noises, smoke, flashing lights or other intrusive environmental distractions. (Tr. 134-35).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of food inspector, belt inspector, and laundry inspector, all of which the ALJ found existed in sufficient numbers in the national and regional economies. (Tr. 139). As a result, the ALJ concluded that Claimant

6

was not under a disability from July 26, 2012 through the date of the decision.  Id.

Claimant contends the ALJ failed to properly consider the opinion of her treating physician, Dr. Michael Irvin.  Claimant received treatment from Dr. Irvin since November of 2010.  By letter dated September 11, 2014, Dr. Irvin related that he was treating Claimant for "multiple medical conditions" and that he did not feel she could work at this time as a result of these conditions.  He also stated that he did not believe the conditions "will improve in the near future and it is unknown at this time if she will ever be able to enter the workforce."  (Tr. 1182).

On July 1, 2016, Dr. Irvin also provided a letter to the Appeals Council which further defined the "multiple medical conditions" as "depression, anxiety, back pain, degenerative disc disease and spinal stenosis in her neck, shoulder pain, hypertension, migraine headaches, and edema."  He stated that some of the conditions had become severe and all affected her on a daily basis.  He wrote that he was not treating Claimant with medication.  Dr. Irvin related that Claimant did not have the financial ability to pay for care.  He opined that Claimant could not work in any capacity and that he did not feel her conditions would improve without proper imaging and treatment which were precluded by Claimant's financial condition.  (Tr. 124).

7

Claimant contends the ALJ never referenced Dr. Irvin's letter of September of 2014 and that he only mentioned one specific treatment record from Dr. Irvin despite a considerable record of treatment. The ALJ is required to consider every medical opinion in reaching his assessment and must provide specific, legitimate reasons for rejecting an opinion. Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003). Defendant argues that the statement by Dr. Irvin serves as a vocational opinion rather than a medical opinion and, therefore, it is typically reserved to the Commissioner. Even though this is an issue reserved to the Commissioner, the ALJ must still assess and consider the opinion. "[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored." Miller v. Barnhart, 43 Fed.Appx. 200, 204 (10th Cir. 2002). The ALJ did just that in the case of Dr. Irvin's letter. On remand, the ALJ shall consider and weigh the opinion together with the July, 2016 letter which was provided to the Appeals Council.[2]

**Discussion of Probative Evidence**

---

[2] Defendant also contends the ALJ discussed the opinion of a state agency medical consultant who considered Dr. Irvin's letter opinion. Therefore, Defendant asserts the ALJ considered the letter. This circuitous type of vicarious consideration of an opinion is not defensible when the state agency consultant's discussion of Dr. Irvin's opinion is not discussed in the ALJ's decision. He merely referenced the state agency consultant's opinion on the exertional level at which Claimant could work.

Claimant also asserts the ALJ ignored probative medical evidence regarding her efforts to seek treatment for her migraine headaches. Claimant sought treatment for her migraine headaches in the emergency room five times between January of 2012 and April of 2012, on two occasions in September of 2012, and on four occasions in December of 2012 as well as in February of 2013, April of 2013, May of 2013, twice in July of 2013, twice in August of 2013, twice in October of 2013, twice in November of 2013, and twice in December of 2013. The treatment usually involved injections of Demerol and an anti-nausea medication. (Tr. 776-77, 786-87, 790-92, 799-802, 804-06, 807, 808-11, 812, 813-16, 817, 818, 820, 822-23, 825-29). Claimant also sought emergency room treatment for her migraines on three occasions in January of 2014, twice in February of 2014, once in March of 2014, once in April of 2014, and once in May of 2014. (Tr. 803, 830-36). In the interim, Dr. Irvin also treated Claimant for migraine headaches in April, May, July, August, and October of 2012, and November of 2013. (Tr. 651-52, 662-65, 733-34, 737-38, 748-49, 785).

The ALJ only referenced Claimant's migraine condition as a part of referencing her disability report form and once in connection with a recognition by the psychiatric reviewer, Dr. Mary Rolison. According to the ALJ, Dr. Rolison noted that Claimant received a diagnosis of migraine headaches on November 21, 2013. (Tr. 135-36).

9

Given the considerable evidence of Claimant's treatment record and ongoing difficulties with her migraine headaches, the ALJ should have considered the condition and its effects both singly and in combination with her other impairments to determine whether they interfered with Claimant's ability to engage in basic work activities. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. . . . <u>Vincent ex rel. Vincent v. Heckler</u>, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. <u>Id</u>.; see also <u>Zblewski v. Schweiker</u>, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position")." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009–10 (10th Cir. 1996). The ALJ's decision lacks evidence of any meaningful consideration of the treatment record supporting Claimant's migraine headaches as a debilitating impairment. On remand, the ALJ shall analyze the evidence concerning Claimant's treatment for migraines, whether the condition continues to require such frequent treatment, and the effect the condition has upon her ability to engage in work activities.

**Step Five Analysis**

Claimant also contends the ALJ's hypothetical questioning of the vocational expert did not mirror the RFC with precision. Specifically, the ALJ's questioning included occasional overhead reaching but frequent reaching in all other directions and frequent handling and fingering. (Tr. 165-66). The RFC included a restriction to only occasional use of upper extremities. (Tr. 134).

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. Hargis, 945 F.2d at 1489.

The hypothetical questioning of the vocational expert did not mirror the ALJ's RFC in all respects. Moreover, since this Court

is requiring a re-evaluation of the RFC in light of the other deficiencies in the ALJ's decision, the questioning may require further modification to accommodate any changes to the RFC on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

IT IS SO ORDERED this 19th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE